# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TOM OHRSTROM, individually and derivatively on behalf of P.B Ohrstrom and Sons, Inc., | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Case No. |
| P.B. OHRSTROM & SONS, INC., MAXICROP U.S.A., INC., and LARS OHRSTROM | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff, TOM OHRSTROM ("Tom"), by his counsel, John F. Grady and Lauren F. Catlin, Grady Bell LLP, complains against defendants P.B. OHRSTROM & SONS, INC. ("P.B. Ohrstrom"), MAXICROP U.S.A., INC. ("Maxicrop"), and LARS OHRSTROM ("Lars"), and states as follows:

## PARTIES

1. P.B. Ohrstrom is an Illinois corporation and a "close corporation" under Illinois law. At all relevant times its principal place of business has been in Elk Grove Village, Illinois, and it has been a citizen of Illinois.

2. At all relevant times, Tom has been a shareholder, director and officer of P.B. Ohrstrom. All relevant times, Tom has resided in San Diego, California and has been a citizen of California.

3. At all relevant times, Lars has been a shareholder, director and officer of P.B. Ohrstrom. All relevant times, Lars has resided in Arlington Heights, Illinois and has been a citizen of Illinois.

4.  Maxicrop is an Illinois corporation. At all relevant times its principal place of business has been in Elk Grove Village, Illinois, and it has been a citizen of Illinois.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1367 as this is a controversy between citizens of different states with an amount in controversy exceeding $75,000 exclusive of interest and costs.

6.  Venue is proper in this district because Lars, P.B. Ohrstrom and Maxicrop are all citizens of this district and all or substantially all of the conduct alleged in this complaint occurred in this district.

## FACTS

7.  P.B. Ohrstrom is an importer and distributor of seaweed and seaweed extracts for the feed, home & garden, horticultural and agricultural markets. P.B. Ohrstrom and Maxicrop were founded and incorporated by Per Bye Ohrstrom in the 1970's. Tom and Lars are the sons of Per Bye Ohrstrom.

8.  Per Bye Ohrstrom died on November 8, 2012.

9.  Tom is currently the owner of 50% of the outstanding shares of P.B. Ohrstrom.

10. The remaining 50% of the outstanding shares of P.B. Ohrstrom are owned as follows:

    a. Lars is currently the owner of 25% of the outstanding shares of P.B. Ohrstrom.

    b. LEA KAYLAN OHRSTROM ("Lea") is currently the owner of 5% of the outstanding shares of P.B. Ohrstrom.

    c. JAN ERIK OHRSTROM ("Jan") is currently the owner of 5% of the outstanding shares of P.B. Ohrstrom.

    d. JENNY MARIE OHRSTROM ("Jenny") is currently the owner of 5% of the outstanding shares of P.B. Ohrstrom.

    e. PER KRISTIAN OHRSTROM ("Per") is currently the owner of 5% of the outstanding shares of P.B. Ohrstrom.

    f. ANNA LIV OHRSTROM ("Anna") is currently the owner of 5% of the outstanding shares of P.B. Ohrstrom.

11. Lars is in the process of purchasing all of the shares of P.B. Ohrstrom owned by Lea, Jan, Jenny, Per and Anna. Once the purchase is complete, Lars and Tom will each own 50% of the outstanding shares of P.B. Ohrstrom.

12. Lars claims that he holds the proxies of Lea, Jan, Jenny, Per and Anna until he completes the purchase of their shares such that, when combined with his own voting power, he has the power to vote 50% of the shares of P.B. Ohrstrom.

13. Maxicrop is wholly owned by P.B. Ohrstrom and P.B. Ohrstrom is the only shareholder of Maxicrop.

## COUNT I – AGAINST LARS
## BREACH OF FIDUCIARY DUTY

14. Tom realleges Paragraphs 1-13.

15. This count is brought by Tom individually against Lars for breach of the fiduciary duty Lars owes Tom.

16. Tom and Lars are and have been the only directors of P.B. Ohrstrom at all relevant times.

17. Article III, Section 1 of the Bylaws of P.B. Ohrstrom provide that "[t]he business of the corporation shall be managed by its board of directors."

18. As shareholders of a close corporation, Lars owes Tom fiduciary duties, including duties of honesty, good faith, fair dealing and loyalty.

19. Lars is the President of P.B. Ohrstrom and has been the President since November 1, 2015. As President, Lars has always had power over and control of P.B. Ohrstrom's day-to-day operations to the exclusion of Tom.

20. Specifically, under the Bylaws of P.B. Ohrstrom, Article IV, Section 4, "[t]he president shall be the principal executive officer of the corporation. Subject to the direction and control of the board of directors, he shall be in charge of the business of the corporation . . ."

21. In knowing and deliberate breach of his fiduciary duties to Tom, Lars has used his corporate power as president and his 50% voting power to block Tom from accessing critical documents concerning the financial condition and health of P.B. Ohrstrom and Maxicrop.

22. Specifically, Lars has breached his fiduciary duties to Tom in at least the following ways:

    a. Lars has maintained corporate financial records in six locked file cabinets in his office at P.B. Ohrstrom's headquarters despite Tom's repeated requests to access and review the records. Although Lars provided Tom with a key to one of the six cabinets on May 16, 2017 after learning that Tom was consulting with an attorney regarding Lars' fiduciary breaches, that cabinet contains historical financial information such as old tax returns. Nothing in that cabinet allows Tom to understand the current financial condition and health of P.B. Ohrstrom

and Maxicrop. To date, Lars has still failed to provide Tom with a key to unlock any of the other five file cabinets.

b. Lars denied Tom access to P.B. Ohrstrom's accounting software, QuickBooks, despite Tom's repeated requests until Lars learned that Tom was consulting with an attorney. In late May or early June 2017, Lars gave Tom QuickBooks access. However, the QuickBooks data lags months behind and contains no current financial data that would allow Tom to understand the current financial condition and health of P.B. Ohrstrom and Maxicrop (collectively "Companies").

c. Tom has been unable to obtain current financial information from the Companies' accountants because Lars has directed or encouraged the accountants to ignore Tom's repeated requests. As a result, Tom has no access to documents that are essential to gain any level of understanding of how Lars is and has been using the Companies' funds, such as:

   i. The Companies' accounting records from December 1, 2012 to present;

   ii. The Companies' payroll records from December 1, 2012 to present;

   iii. The Companies' records of bonus payments from December 1, 2012 to present;

   iv. Statements and receipts related to Lars' purchases with his P.B. Ohrstrom Capital One Spark Business Visa card;

d. Lars has directed or encouraged the Companies' attorneys from providing Tom with current financial information or any other information that Tom has requested from them.

23. In unsuccessful attempts to remove Lars as President and end his abuse of the office as well as his blockade of financial information, Tom called a special meeting of the shareholders on November 18, 2017. The purpose of the meeting was to elect new directors who, in turn, could elect new officers and end Lars' term as President. However, Lars used the cumulative voting required by the Bylaws to vote all of his own shares, together with shares of Lea, Jan, Jenny, Per and Anna, to re-elect himself as a director. Tom is the only other director and there is therefore a deadlock that allows Lars to remain in office and prevent Tom from creating any greater access to financial information.

24. Tom has and will continue to suffer damages as a result of Lars' breaches of fiduciary duty.

25. Lars' actions lacked a valid business purpose.

26. Lars' actions were oppressive, intentional, willful and wanton, and done with the intent to harm Tom by freezing him out of financial information and knowledge regarding the day-to-day operations of P.B. Ohrstrom and its asset, Maxicrop, and actively preventing Tom from exercising his right to oversee, manage and monitor the affairs of P.B. Ohrstrom as a director, officer and 50% shareholder.

WHEREFORE, Tom Ohrstrom prays for a judgment in his favor and against Lars in the amount of at least $75,000.00, plus costs, and for any other relief the Court deems appropriate.

### COUNT II – AGAINST P.B. OHRSTROM
**SHAREHOLDER'S ACTION UNDER SECTION 12.56 OF THE ILLINOIS BUSINESS CORPORATION ACT, 805 ILCS 5/12.56**

27. Tom realleges Paragraphs 1-26.

28. P.B. Ohrstrom has no shares that are listed on a national securities exchange or that are regularly traded in a market maintained by one or more members of a national or affiliated securities association.

29. Article III, Section 6 of the Bylaws of P.B. Ohrstrom provides, in part, that "[a] majority of the number of directors fixed by these by-laws shall constitute a quorum for transaction of business at any meeting of the board of directors . . .[.]"

30. Article III, Section 7 of the Bylaws of P.B. Ohrstrom provides that "[t]he act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors, unless the act of a greater number is required by statute, these by-laws, or articles of incorporation."

31. Since 2014, Tom and Lars have been the only directors of P.B. Ohrstrom, meaning that both must be present at a meeting for a quorum to exist under Section 6 of the Bylaws, and they must act unanimously in order to constitute a majority under Section 7 of the Bylaws.

32. As directors and shareholders, Tom and Lars are deadlocked in the management of the affairs of P.B. Ohrstrom and it is impossible for the shareholders to break the deadlock and elect a new board of directors because Tom and Lars each have the power to vote 50% of P.B. Ohrstrom's outstanding shares.

33. Indeed, on September 12, 2017, the attorney for P.B. Ohrstrom, William J. Wickersty stated on the record during the Annual Shareholders' Meeting of P.B. Ohrstrom that, "We're deadlocked. There's going to be no change of leadership right now." Speaking to Tom and Lars during that meeting, Mr. Wickersty further stated that "There's just no trust between the two of you."

34. Irreparable injury to P.B. Ohrstrom is threatened because as directors and shareholders Tom and Lars are hopelessly deadlocked, cannot agree on the management of the corporation, and the business of the corporation can no longer be conducted to the general advantage of the shareholders.

35. Furthermore, in the ways that are set forth above, Lars has acted oppressively toward Tom in numerous ways, including freezing him out of financial information and knowledge regarding the day-to-day operations of P.B. Ohrstrom and its asset, Maxicrop, and actively preventing Tom from exercising his right to oversee, manage and monitor the affairs of P.B. Ohrstrom as a director, officer and 50% shareholder.

36. Under these circumstances, Section 12.56(b)(3) of the Illinois Business Corporation Act empowers the Court to remove Lars as an officer and director of P.B. Ohrstrom, and, if that remedy is insufficient, then Section 12.56(b)(12) of the Illinois Business Corporation Act empowers the Court to dissolve P.B. Ohrstrom.

WHEREFORE, Tom Ohrstrom prays for the following relief against the Defendant P.B Ohrstrom:

A. That the Court to remove Lars as an officer and director of P.B. Ohrstrom under Section 12.56(b)(3) of the Illinois Business Corporation Act;

B. That the Court dissolve P.B. Ohrstrom under Section 12.56(b)(12) of the Illinois Business Corporation Act;

C. That the Court conduct a judicial sale of the assets of P.B. Ohrstrom;

D. That the Court grant any other relief that it deems appropriate.

## **COUNT III – AGAINST LARS**
## **TOM, DERIVATIVELY, ON BEHALF OF P.B. OHRSTROM**

37. Tom realleges Paragraphs 1-36.

38. This count is brought derivatively by Tom on behalf of P.B. Ohrstrom against Lars for breach of the fiduciary duties Lars owes P.B. Ohrstrom.

39. As an officer, director and shareholder of P.B. Ohrstrom, Lars was a fiduciary of P.B. Ohrstrom and owed it the fiduciary duty to conduct the business of P.B. Ohrstrom loyally, faithfully, carefully, diligently and prudently.

40. Lars has breached the fiduciary duties that he owed to P.B. Ohrstrom in numerous ways as set forth above, including by freezing Tom, the only other director and officer, out of financial information and knowledge regarding the day-to-day operations of P.B. Ohrstrom and its asset, Maxicrop, and depriving P.B. Ohrstrom the benefit of fully-informed officers and directors.

41. Lars' acts are incapable of ratification.

42. P.B. Ohrstrom has suffered and will continue to suffer damages as a result of Lars' breaches of fiduciary duty in an amount in excess of $75,000.00.

43. Lars' actions were intentional, willful and wanton and done with the intent to harm P.B. Ohrstrom and/or in reckless disregard of the duties and responsibilities that P.B. Ohrstrom entrusted him to perform, making the imposition of punitive damages appropriate.

44. On January 24, 2018, Tom, through counsel, made a demand on P.B. Ohrstrom's board of directors, personally and through counsel, for P.B. Ohrstrom to assert the claim contained in this count. On February 5, 2018, that claim was rejected.

WHEREFORE, Tom Ohrstrom, derivatively and on behalf of P.B. Ohrstrom, prays for a judgment in favor of P.B. Ohrstrom and against Lars in the amount of at least $75,000.00, plus costs, and for any other relief the Court deems appropriate.

### COUNT IV– AGAINST MAXICROP
### TOM, DERIVATIVELY, ON BEHALF OF P.B. OHRSTROM

**SHAREHOLDER'S ACTION AS TO MAXICROP UNDER SECTION 12.56 OF THE ILLINOIS BUSINESS CORPORATION ACT, 805 ILCS 5/12.56**

45. Tom relleges Paragraphs 1-44.

46. Maxicrop has had no directors for more than three years.

47. The only shareholder of Maxicrop is P.B. Ohrstrom.

48. P.B. Ohrstrom is deadlocked in voting power and has failed for at least two consecutive annual meeting dates to elect successor directors of Maxicrop.

49. Irreparable injury is caused and/or threatened to Maxicrop because it has no directors and therefore the business of the corporation cannot be conducted to the general advantage of the shareholders.

50. Under these circumstances, Section 12.56(b)(3) of the Illinois Business Corporation Act empowers the Court to dissolve Maxicrop.

51. On January 24, 2018, Tom, through counsel, made a demand on P.B. Ohrstrom's board of directors, personally and through counsel, for P.B. Ohrstrom to assert the claim contained in this count. On February 5, 2018, that claim was rejected.

WHEREFORE, Tom Ohrstrom, derivatively and on behalf of P.B. Ohrstrom, prays for the following relief against the Defendant Maxicrop:

A. That the Court dissolve Maxicrop under Section 12.56(b)(12) of the Illinois Business Corporation Act;

    B.  That the Court conduct a judicial sale of the assets of Maxicrop;

    C.  That the Court grant any other relief that it deems appropriate.

## JURY DEMAND

Plaintiff, Tom Ohrstrom, demands a trial by jury on all claims in this complaint so triable.

                                        Respectfully submitted,

                                        **TOM OHRSTROM**

                                        By:  <u>/s/ John F. Grady</u>
                                                One of his Attorneys

John F. Grady
Lauren F. Catlin
Grady Bell LLP
53 W. Jackson, Suite 1250
Chicago, IL 60604
312-939-0964
jgrady@gradybell.com
lcatlin@gradybell.com