# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TOM OHRSTROM, individually and derivatively on behalf of P.B. Ohrstrom and Sons, Inc., ) ) ) ) Plaintiff, ) ) v. ) ) P.B. OHRSTROM & SONS, INC., ) MAXICROP U.S.A., INC., and LARS ) OHRSTROM, ) ) Defendants. ) | No. 18 C 971<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

Upset with his brother's management of the company founded by his father, Plaintiff Tom Ohrstrom ("Tom") filed this action on his own behalf and as a shareholder derivative suit on behalf of P.B. Ohrstrom and Sons, Inc. ("P.B. Ohrstrom") against P.B. Ohrstrom, its wholly owned subsidiary, Maxicrop U.S.A., Inc. ("Maxicrop"), and his brother, Lars Ohrstrom ("Lars"). Tom brings claims both individually and derivatively on behalf of P.B. Ohrstrom against Lars claiming that Lars breached his fiduciary duties to Tom and the company. Tom also brings claims against P.B. Ohrstrom and, derivatively on behalf of P.B. Ohrstrom, against Maxicrop under Section 12.56 of the Illinois Business Corporation Act, 805 Ill. Comp. Stat. 5/12.56, seeking the dissolution of the companies and a judicial sale of their assets. Lars, joined by P.B. Ohrstrom and Maxicrop, has moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). The Court finds that it has diversity jurisdiction over the claims against Lars but not over those against P.B. Ohrstrom or Maxicrop. And with respect to the

claims against Lars, Tom has sufficiently alleged the required elements for both his direct and derivative breach of fiduciary duty claims to proceed to discovery.

## BACKGROUND[1]

P.B. Ohrstrom is a closely held Illinois corporation with its principal place of business in Elk Grove Village, Illinois. It imports and distributes seaweed and seaweed extracts for the feed, home and garden, horticultural, and agricultural markets. Maxicrop, its wholly owned subsidiary, is similarly incorporated in Illinois with its principal place of business in Elk Grove Village. Per Bye Ohrstrom founded both P.B. Ohrstrom and Maxicrop in the 1970s. On its 2015 consolidated federal income tax return, P.B. Ohrstrom and Maxicrop reported a combined total income of over $600,000. In 2016, they reported over $1,300,000 in total income. According to QuickBooks, Maxicrop had sales of $3,048,450.73 in 2015, $3,195,376.81 in 2016, and $3,481,085.29 in 2017. P.B. Ohrstrom had sales of $1,200,303.43 in 2015, $1,246,713.21 in 2016, and $1,767,491.65 in 2017.

Currently, Tom owns 50% of P.B. Ohrstrom's shares. He lives in California and is one of the directors of P.B. Ohrstrom. Lars, the only other director of P.B. Ohrstrom, lives in Illinois, and owns 25% of P.B. Ohrstrom's shares. The remaining 25% of the shares are split evenly among Lea Kaylan Ohrstrom, Jan Erik Ohrstrom, Jenny Marie Ohrstrom, Per Kristian Ohrstrom, and Anna Liv Ohrstrom. Lars holds the proxies for these five individuals' shares, meaning that he holds 50% of the voting power. Maxicrop has had no directors for over three

---

[1] The facts in the background section are taken from Tom's complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss pursuant to Rule 12(b)(6). *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). This section additionally includes other facts submitted by Tom in his response to the motions to dismiss to the extent they are consistent with the allegations of the complaint. *Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001). Finally, the Court also considers the facts provided by Tom in his affidavit when considering the motions to dismiss pursuant to Rule 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009)

years, with the P.B. Ohrstrom directors failing for at least two consecutive annual meeting dates to elect successor directors of Maxicrop.

Lars has been president of P.B. Ohrstrom since November 1, 2015, with his annual salary exceeding $75,000. Lars maintains corporate financial records in six locked file cabinets in his office at P.B. Ohrstrom's headquarters. Tom has asked for access to review these records, but Lars only gave Tom a key to one of the six cabinets on May 16, 2017, after learning that Tom was consulting with an attorney. The cabinet to which Tom gained access only contains historical financial information, such as old tax returns, and not documents about the companies' current financial condition. Tom did obtain access to QuickBooks in May or June 2017. This data similarly "lags months behind." Doc. 1 ¶ 22(b). Lars has instructed the companies' accountants not to respond to Tom's requests for information, leaving Tom without access to the companies' accounting, payroll, and bonus payment records from December 1, 2012 to the present, and statements and receipts related to Lars' purchases with his P.B. Ohrstrom business credit card. Lars also has directed the companies' attorneys not to provide Tom with current financial information. Tom made a demand of P.B. Ohrstrom and Maxicrop to inspect their corporate records on May 17, 2017, with little success.

On September 12, 2017, at the P.B. Ohrstrom annual shareholders' meeting, P.B. Ohrstrom's attorney stated on the record that "We're deadlocked. There's going to be no change of leadership right now." *Id.* ¶ 33. He further noted that Lars and Tom did not trust each other. On November 18, 2017, Tom called a special shareholders meeting to elect new directors and, in turn, elect new officers to end Lars' term as president of P.B. Ohrstrom. But Lars voted all his own shares as well as those he held by proxy to reelect himself as a director. With Tom as the only other director, a deadlock resulted, allowing Lars to remain in office.

On January 24, 2018, Tom made a demand on P.B. Ohrstrom's board of directors for P.B. Ohrstrom to assert a derivative claim against Lars for breach of fiduciary duty and against Maxicrop. On February 5, 2018, P.B. Ohrstrom rejected the demand.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital*, 572 F.3d at 443–44. If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.     Subject Matter Jurisdiction**

First, Defendants argue that the Court does not have subject matter jurisdiction over Tom's claims. Diversity jurisdiction exists in cases where the amount in controversy exceeds $75,000 and the plaintiff and defendants are citizens of different states. 28 U.S.C. § 1332(a)(1).

**A.     Amount in Controversy**

Defendants contend that Tom has not sufficiently alleged that the amount in controversy exceeds $75,000. Tom must satisfy the amount in controversy requirement separately against each individual defendant. *See LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 548 (7th Cir. 2008).

**1.     Lars**

Although Tom claims that he seeks a judgment of "at least $75,000" for Lars' breaches of fiduciary duty, Defendants argue that no basis exists for such a demand where the remedy for Lars' alleged breach, failing to provide Tom with certain financial information, should be ordering Lars or the companies to provide Tom with access to the requested information. But this preferred remedy proposed by Lars does not mean it is the only available remedy for Lars'

5

alleged breach. Tom does not provide any response for his direct claim against Lars,[2] instead only contending that, with respect to the derivative claim he pursues against Lars on behalf of P.B. Ohrstrom, damages may include Lars' compensation during the period of the breach. *See Black v. Hollinger Int'l, Inc.*, No. 04 C 2454, 2004 WL 2496590, at *2 (N.D. Ill. Nov. 3, 2004) ("Under Illinois law, it is well established that 'employees who breach their fiduciary duties are required to forfeit all compensation received during the period of the breach.'" (quoting *Archer Daniels Midland Co. v. Whitacre*, 60 F. Supp. 2d 819, 824 (C.D. Ill. 1999))). With his response, Tom includes his affidavit stating that Lars' compensation exceeded $75,000 in 2015, 2016, and 2017.

Defendants respond that the remedy Tom seeks, forfeiture of compensation, is within the Court's discretion and only available for egregious breaches of fiduciary duty. *See* Doc. 29 at 4 (citing *In re Marriage of Pagano*, 607 N.E.2d 1242, 1249–50, 154 Ill. 2d 174, 180 Ill. Dec. 729 (1992)). Defendants claim that Tom has not alleged a breach of fiduciary duty, let alone any egregious circumstances that would allow him to recover any portion of Lars' compensation as damages. They also contend that a forfeiture would only cover the period of time of a breach. Tom does allege that Lars acted intentionally and with the intent to harm P.B. Ohrstrom, warranting punitive damages. He also alleges that the breach spanned at least a year, suggesting that Lars would need to forfeit over $75,000 in compensation if the Court found such a remedy appropriate. Therefore, because the Court cannot conclusively determine that the forfeiture remedy would not be legally available based on the current state of the pleadings, it finds the amount in controversy sufficiently pleaded with respect to Tom's derivative claim against Lars.

---

[2] Presumably, Tom argues that to the extent the Court has diversity jurisdiction over the derivative claim for breach of fiduciary duty against Lars, it has supplemental jurisdiction over Tom's direct claim for breach of fiduciary duty against Lars.

### 2. P.B. Ohrstrom and Maxicrop

With respect to Tom's direct and derivative claims seeking dissolution and judicial sale of the companies, Tom contends that these claims should be considered equitable in nature, with the amount in controversy measured by "the value of the object of the litigation." *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (citation omitted). For P.B. Ohrstrom, the value presumably would be 50% of the company's value, *i.e.*, Tom's stake in the company, while in the case of his derivative claim, the Court "use[s] the value of the corporation as a whole to determine the amount in controversy." *Schlafly v. Eagle Forum*, No. 4:17-CV-00283-JAR, 2017 WL 3995560, at *2 (E.D. Mo. Sept. 7, 2017).

In his response, Tom provides figures for the companies' total reported income and sales from 2015, 2016, and 2017, all of which exceed $75,000. But, as Defendants point out, this does not realistically estimate the monetary value of the remedies Tom seeks because to value the corporation, Tom and the Court must also account for P.B. Ohrstrom and Maxicrop's liabilities. Because Tom has not established that his claims for equitable relief against P.B. Ohrstrom and Maxicrop exceed the jurisdictional minimum, the Court must dismiss them at this time. *See Macken*, 333 F.3d at 800 (in equitable actions, the plaintiff must "establish evidentiary support, or at least a likelihood of obtaining that support, *before* filing suit in federal court" that the realistic value on injunctive relief exceeds $75,000).

### B. Complete Diversity

Next, Defendants argue that the Court cannot exercise subject matter jurisdiction because, by bringing derivative claims on behalf of P.B. Ohrstrom, Tom has destroyed the diversity of the parties in this case. Essentially, Defendants argue that P.B. Ohrstrom, an Illinois corporation, should be considered a plaintiff in the action because Tom has brought derivative

claims on its behalf. *See* Doc. 16 at 5 (citing *Koster v. Lumbermans Mut. Cas. Co.*, 330 U.S. 518, 522–23 (1947)). Having concluded that only Tom's claims against Lars meet the amount in controversy, the Court need not address this argument, because Tom and Lars admittedly are citizens of different states.

For the sake of completeness, however, in case Tom amends his complaint to include additional allegations against P.B. Ohrstrom and Maxicrop to meet the amount in controversy, the Court notes that their addition as Defendants would not destroy diversity jurisdiction. As Defendants acknowledge, where the corporation's management "opposes the derivative suit the corporation is treated as a defendant rather than as a plaintiff for purposes of determining whether there is diversity jurisdiction." *Beck v. Dobrowski*, 559 F.3d 680, 687 (7th Cir. 2009). The Court looks to the pleadings to determine antagonism. *Smith v. Sperling*, 354 U.S. 91, 96, 77 S. Ct. 1112, 1 L. Ed. 2d 1205 (1957). Tom contends in the complaint that Lars controls P.B. Ohrstrom's day-to-day operations and that P.B. Ohrstrom rejected Tom's demand to pursue a derivative claim against Lars for breach of fiduciary duty and against Maxicrop. Tom also suggests that antagonism is demonstrated by the fact that P.B. Ohrstrom has joined in Lars' motion to dismiss the complaint.

But Defendants respond that Tom's allegations of deadlock require the Court to realign P.B. Ohrstrom as a plaintiff. *See Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987) ("[In] cases in which the corporation's management or its shareholders are deadlocked with respect to a particular issue, courts have realigned such corporations as party plaintiffs. Mere inaction, or inability to act on the part of the corporation, because of a deadlock between those who control the corporation has not been found to be the equivalent of active antagonism." (citation omitted)). But unlike a case where there is complete deadlock with no one party controlling the

corporation, here, Tom alleges that Lars has control over P.B. Ohrstrom's day-to-day operations, which is borne out by the fact that P.B. Ohrstrom has moved to dismiss Lars' complaint. *Cf. Cohen v. Heussinger*, No. 89 Civ. 6941 (SS), 1994 WL 240378, at *2 (S.D.N.Y. May 26, 1994) (aligning corporation as plaintiff where shareholders deadlocked and complaint did not allege that defendant controlled the corporation). Thus, the Court finds that P.B. Ohrstrom remains antagonistic to Tom and is properly aligned as a defendant in this action. *See Ono v. Itoyama*, 884 F. Supp. 892, 900–01 (D.N.J. 1995) (finding antagonism where plaintiff and defendant held equal shares in company and were co-directors of the company, but the defendant had gained control of the corporation). This means that complete diversity would exist even if P.B. Ohrstrom and Maxicrop remained as defendants.

## II.     Sufficiency of the Complaint

Tom brings two claims against Lars for breach of fiduciary duty, one as a direct claim for violations of duties Lars owes him as a shareholder in a close corporation (Count I), and one derivatively, for violations of duties Lars owes P.B. Ohrstrom as an officer, director, and shareholder (Count III). Under Illinois law, to establish a breach of fiduciary duty, Tom must show that (1) a fiduciary duty existed, (2) that Lars breached that duty, and (3) the breach of the duty proximately caused damages. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010).

With respect to the direct claim, Tom correctly contends that Lars owes him fiduciary duties, including the duties of honesty, good faith, fair dealing, and loyalty, as they are both shareholders of a closely held corporation. *See Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218–19 (7th Cir. 1995) ("Under Illinois law, a shareholder in a close corporation owes a duty of loyalty to the corporation and to the other shareholders. Stockholders must 'deal with the utmost

9

good faith, fairly, honestly, and openly with their fellow stockholders.'" (citations omitted)). Tom claims that Lars has breached his fiduciary duties by failing to provide Tom with access to all of P.B. Ohrstrom's financial records, and specifically to information that would allow Tom to understand the current financial condition of both P.B. Ohrstrom and Maxicrop. The information Lars has allegedly withheld includes the companies' accounting, payroll, and bonus payment records from December 1, 2012 to the present, as well as statements and receipts from Lars' purchases on his P.B. Ohrstrom Capital One Spark business Visa card. Lars argues that Tom has not sufficiently specified the financial information he seeks, but Tom has more than complied with Rule 8's notice requirements, specifying the specific financial records that he has been unable to access, including the five locked file cabinets of corporate financial records in Lars' office at P.B. Ohrstrom and various accounting and payroll records dating back to 2012. *See Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 837 (N.D. Ill. 2016) ("In the absence of underlying fraud allegations, claims for breach of fiduciary duties are generally not subjected to heightened 9(b) requirements."). Lars also asserts that Tom's claim fails because Tom has not made a written demand for inspection of P.B. Ohrstrom's books and records in compliance with Illinois' Business Corporation Act, 805 Ill. Comp. Stat. 5/7.75(b), but Tom responds that he served both P.B. Ohrstrom and Maxicrop with such a demand on May 17, 2017 to no avail. *See* Doc. 25 at 8 n.4. Additionally, Lars contends that Tom can access all the information he needs because he now has access to QuickBooks, but the Court refuses to engage in factfinding at this stage, particularly in light of Tom's allegations that the information in QuickBooks is not current and that Lars only gave him access to QuickBooks in late May or early June 2017, despite Tom's earlier repeated requests for access.

Finally, Lars argues that Tom has not sufficiently pleaded causation or damages. Although it is true that Tom does not request an accounting as a remedy, the typical remedy for a failure to provide access to a corporation's books and records, Lars does not provide any support that such an omission is fatal to Tom's claim. And Tom has at this stage sufficiently pleaded that Lars' breach of his fiduciary duties has effectively frozen Tom out of both P.B. Ohrstrom and Maxicrop, causing him damages. Therefore, the Court allows Tom to proceed with his direct claim against Lars (Count I).

Similarly, the Court finds Tom has sufficiently stated a claim for breach of fiduciary duty on behalf of P.B. Ohrstrom. Lars does not dispute that he owes the corporation a fiduciary duty as well. *Alpha Sch. Bus Co. v. Wagner*, 910 N.E.2d 1134, 1158, 391 Ill. App. 3d 722, 331 Ill. Dec. 378 (2009) ("It is well established that corporate officers owe a fiduciary duty to their corporations."). And although Lars briefly contends that to the extent any claim exists, it is Tom's, and not the corporation's, he provides no support for this contention. Tom has alleged that by freezing Tom out of financial and other information concerning the day-to-day operations of both P.B. Ohrstrom and Maxicrop, Lars deprived P.B. Ohrstrom of fully-informed officers and directors. At this stage, at least, this sufficiently demonstrates a breach and damages and puts Lars on notice of the derivative fiduciary duty claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions to dismiss [14, 16, 19]. The Court dismisses Counts II and IV of the complaint without prejudice.

Dated: July 24, 2018

_____
SARA L. ELLIS
United States District Judge